UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MERCER PUBLISHING, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> SMART COOKIE INK, LLC, et al., <br><br> Defendants. | CASE NO. C12-0188JLR <br><br> ORDER ON PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS |
| MERCER PUBLISHING, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> TESTINGMOM.COM, LLC, et al., <br><br> Defendants. | CASE NO. C12-0550JLR |

ORDER- 1

# I. INTRODUCTION

This matter comes before the court on Plaintiff Mercer Publishing, Inc.'s ("Mercer") motions to dismiss all counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). (12-0550 Mot. (12-0550 Dkt. # 12); 12-0188 Mot. (12-0188 Dkt. # 17).) Defendants TestingMom.com, LLC ("TestingMom") and Smart Cookie Ink, LLC ("Smart Cookie") have filed briefs in opposition. (*See* 12-0550 Resp. (12-0550 Dkt. # 15); 12-0188 Resp. (12-0188 Dkt. # 22).)

Having considered the submissions of the parties, the balance of the record, and the relevant law, and no party having requested oral argument, the court GRANTS in part and DENIES in part Mercer's motions (12-0550 Dkt. # 12; 12-0188 Dkt. # 17). The court grants, with leave to amend, the motions with respect to Defendants' counterclaims of fraudulent business practice under the Washington Consumer Protection Act, and with respect to Smart Cookie's counterclaims of intentional interference with business expectancy and contractual relations. The court denies the motions with respect to Defendants' counterclaims for declaratory judgment of non-infringement, and with respect to Smart Cookie's counterclaim pursuant to the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512.[1]

---

[1] Mercer also moved to dismiss TestingMom's counterclaim for copyright misuse (12-0550 Mot. at 6-8); however, Testingmom has since withdrawn that counterclaim. Accordingly, that issue is no longer before this court.

ORDER- 2

## II.   BACKGROUND

This matter involves copyright infringement suits filed by educational publishing company Mercer against two competitors, TestingMom and Smart Cookie.  Mercer originally filed separate complaints against the Defendants, but the two suits were consolidated for pre-trial purposes on May 31, 2012.  (*See* 12-0188 Dkt. # 20; 12-0550 Dkt. # 19.)  Mercer alleges that TestingMom and Smart Cookie have illegally distributed material substantially similar to Mercer's copyrighted standardized-test curriculum.  (*See generally* 12-0188 Compl. (12-0188 Dkt. # 1); 12-0550 Compl. (12-0550 Dkt. # 1).)  In their answers to the respective suits, TestingMom and Smart Cookie each allege that Mercer illegally marginalizes competition through false accusations of infringement and by sending unwarranted cease-and-desist letters and take-down notices.  (*See generally* 12-0550 Ans. (12-0550 Dkt. # 8); 12-0188 Ans. (12-0188 Dkt. # 13).)

In its answer, TestingMom included counterclaims seeking declaratory judgment of non-infringement and alleging violations of Washington's Consumer Protection Act ("CPA") RCW ch. 19.86.  (*See generally* 12-0550 Ans.)  TestingMom also included a counterclaim seeking declaratory judgment of copyright misuse, but has since withdrawn that counterclaim.  (12-0550 Resp. at 9.)  Smart Cookie counterclaimed for declaratory judgment of non-infringement, and alleged tortious business interference and violations of the DMCA and CPA.  (*See generally* 12-0188 Ans.)  Mercer now moves to dismiss all of the counterclaims.

III.     ANALYSIS

A.     **Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss any complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the pleading party must allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In deciding whether the pleading states a plausible claim, the court must assume that the pleading party's allegations are true and must draw all reasonable inferences in that party's favor. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). The court, however, is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact . . . ." *Id.*; *see also Iqbal*, 556 U.S. at 663.

B.     **Fraudulent Business Practice Under the CPA**

Mercer first seeks to dismiss Defendants' counterclaims filed pursuant to the CPA, and contends that the counterclaims are barred by the *Noerr-Pennington* doctrine. (12-0188 Mot. at 1; 12-0550 Mot. at 3.) The CPA affords a cause of action to anyone who is injured by "unfair methods of competition [or] unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." RCW 19.86.020. To state a claim under the CPA, a party must allege: (1) that the business engaged in an unfair or deceptive act or practice; (2) which occurred in trade or commerce; (3) that had an impact on the public interest; (4) and injured the plaintiff's business or property; and (5) which was caused by

ORDER- 4

the unfair or deceptive practice. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 537-38 (Wash. 1986).

Here, Defendants allege that Mercer's unfair commercial conduct consists of the "sending of false DMCA notices," and they further allege that such conduct is "harmful to the public interest" because it results in "depriving the public [of] access to legitimate educational publications and website information." (12-0550 Ans. ¶ 77; *see also* 12-0188 Ans. ¶ 83.) Defendants claim that they were both targets of these allegedly false notices, and they claim that other educational publishers were also targeted. (12-0550 Ans. ¶¶ 61-63; *see also* 12-0188 Ans. ¶¶ 21-27.) Defendants further allege that they have suffered "severe and irreparable injury and damages" as a consequence of this allegedly unfair and fraudulent practice. (12-0550 Ans. ¶ 80; 12-0188 Ans. ¶ 28.) Based on these facts, the court concludes that Defendants have stated CPA claims that are facially plausible.

Nevertheless, Mercer argues that the counterclaims must be dismissed because the accused conduct is protected by the *Noerr-Pennington* doctrine. (12-0550 Mot. at 1; 12-0188 Mot. at 1.) As explained below, the court finds that Mercer is correct.

**1. Legal Standard Under the *Noerr-Pennington* Doctrine**

The *Noerr-Pennington* doctrine is derived from the Petition Clause of the First Amendment and provides that "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). Although the doctrine initially emerged in the antitrust context, the Supreme Court has since extended the doctrine to protect petitioning activity from liability in other statutory contexts. *BE & K Constr. Co.*

*v. NLRB*, 536 U.S. 516, 525 (2002).  In the Ninth Circuit, the *Noerr-Pennington* doctrine provides immunity from both federal and state statutory and common-law liability. *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1008 (9th Cir. 2008) (finding immunity from liability under California common law).

Where the *Noerr-Pennington* doctrine is implicated, courts in the Ninth Circuit impose a heightened pleading burden upon the party asserting that immunity does not exist because when a party "seeks damages . . . for conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required." *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1063 (9th Cir. 1998); *see also McMillin v. Foster City*, No. C 11–03201 WHA, 2012 WL 2568207, at *9 (N.D. Cal. July 2, 2012); *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1083 (C.D. Cal. 2010).  In its pleadings, the party denying immunity—here, Defendants—must explain exactly why the alleged conduct is not protected by the *Noerr-Pennington* doctrine. *Franchise Realty Interstate Corp. v. San Francisco Local Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1082 (9th Cir. 1976); *McMillin*, 2012 WL 2568207, at *13.  If it fails to do so, even at the Rule 12(b)(6) stage, the court must dismiss the claim and thereby preserve the "breathing space" afforded to First Amendment guarantees. *Sosa*, 437 F.3d at 927, 931-33.

When determining whether the *Noerr-Pennington* doctrine affords immunity in a certain statutory context, the Ninth Circuit Court of Appeals has instructed lower courts to consider whether the defendant's conduct constitutes a protected petitioning activity

ORDER- 6

and whether the proposed liability imposes a burden upon that activity. *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644 (9th Cir. 2009). Where apparent statutory liability would burden a protected activity, the court then considers whether the activity falls into any doctrinal exception. *Id*. at 646; *Sosa*, 437 F.3d at 938. Finally, where the statutory liability would burden a protected activity, and where no exception applies, the court determines whether the statute must be construed such that the protected activity is a violation of that statute. *Sosa*, 437 F.3d at 932. If there is any possible way to construe the statute such that the protected activity might *not* be a statutory violation, the court must apply the *Noerr-Pennington* doctrine and find the defendant immune from statutory liability. *Id*. The claim at issue is then rendered not actionable, and must be dismissed. *Id*. at 940-41; *Drawsand v. F.F. Props., L.L.P.*, No. C 10–3937 SBA, --- F. Supp. 2d ---, 2011 WL 4727306, at *9 (N.D. Cal. Sept. 30, 2011).

For example, in *BE & K*, the conduct at issue was an employer's filing of unsuccessful lawsuits against union employees. 536 U.S. at 519. The employees alleged that the lawsuits were retaliatory and thus a violation of the National Labor Relations Act ("NLRA"). *Id*. The Supreme Court found that the filing of the lawsuits was a protected activity, and that statutory liability would burden that activity. *Id*. at 530-31. The Court then determined that the lawsuit was "reasonably based" and found no indication that an exception applied. *Id.* at 535. Finally, in examining the NLRA, which imposes liability upon employers that "interfere with, restrain, or coerce employees" who exercise their right to unionize," the Court concluded that this provision "need not be read so broadly" as to clearly impose liability upon the protected activity at issue. *Id*. at 536 (quoting 29

ORDER- 7

U.S.C. § 158(a)(1)). Consequently, the Court remanded for application of the *Noerr-Pennington* doctrine. *BE & K*, 536 U.S. at 537.

Using a similar analysis, the Ninth Circuit affirmed the application of the *Noerr-Pennington* doctrine in the context of the Racketeer-Influenced and Corrupt Organizations Act ("RICO"). *See generally Sosa*, 437 F.3d 923. In *Sosa*, the plaintiffs alleged that the sending of tens of thousands of pre-litigation notices constituted a violation of RICO. *Id.* at 925-26. The court determined that sending the pre-litigation notices was a protected activity, that the activity would be burdened by statutory liability, and that no exception applied. *Id.* at 933, 938-39. Finally, the court examined the language of RICO, which criminalizes "a number of generically specified criminal acts as well as the commission of one of a number of listed predicate offenses." *Id.* at 939-40. The court concluded that the language of the statute "does not . . . clearly reach the conduct at issue here." *Id.* at 939. Accordingly, the court affirmed the application of immunity and the Rule 12(b)(6) dismissal of the claim. *Id.* at 942.

**2. The CPA Claims Burden a Protected Activity, and No Exception Applies**

Here, Mercer's conduct falls within the bounds of the *Noerr-Pennington* doctrine. First, Mercer's right to use judicial and pre-litigation procedures to resolve purported copyright disputes is protected activity. *Sosa*, 437 F.3d at 940. Although it is true that Mercer may not ultimately prevail, even "unsuccessful but reasonably based suits advance some First Amendment interests" and are thus within the reach of *Noerr-Pennington*. *BE & K*, 536 U.S. at 532. Moreover, the Ninth Circuit has emphasized that pre-litigation letters and notices that "threaten[ ] legal action and mak[e] legal

ORDER- 8

representations" are, in fact, protected activity. *Sosa*, 437 F.3d at 940. Therefore, the court concludes that Mercer's alleged conduct is a protected activity. Second, liability pursuant to the CPA would burden Mercer's petitioning rights. Indeed, the mere allegation of unfair petitioning of the courts "poses the threat of reputational harm." *See BE & K*, 536 U.S. at 529-30. The court thus concludes that the statute at issue burdens a protected activity, and *Noerr-Pennington* immunity presumptively applies.

The court must now determine whether any exception applies to the conduct at issue. Defendants argue that the present action falls into the "sham litigation" exception. (12-0550 Resp. at 5-6.) An action is considered a sham if it is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and if the baseless lawsuit is intended to "interfere directly with the business relationships of a competitor." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993). Defendants argue that Mercer's copyright suits are sham litigation because they are "intended to serve illegitimate and ulterior purposes, including obstructing efforts of potential competitors to enter and compete in the market." (12-0550 Ans. ¶ 47; *see also* 12-0188 Ans. ¶ 82.) In supporting this claim, Defendants point out that all of the cease-and-desist letters that Mercer sends to its competitors are identical, and that Mercer has failed to produce evidence of infringement. (12-0550 Resp. at 6.) Although these facts may constitute evidence of an alleged "ulterior purpose[]," the Supreme Court has made clear that "an objectively reasonable effort to litigate cannot be sham regardless of subjective intent." *Prof'l Real Estate Investors*, 508 U.S. at 57. To adequately plead the sham exception, a party must allege facts that

1 suggest that the accused conduct is objectively baseless. *Id*. at 61. Here, even assuming
2 the truth of all of Defendants' allegations, the court concludes that Defendants have not
3 alleged any such facts, and thus that no exception applies.

**3. The CPA Statute Can Be Construed in Such a Way as to Allow for Immunity**

Finally, the court examines the statute at issue to determine "whether, given the important goals of [the statute], the statute proscribes the sending of prelitigation demand letters asserting legal claims that may be weak but do not rise to the level of shams." *Sosa*, 437 F.3d at 939. In answering this question, the court "must bear in mind the principle that if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' [the court is] obligated to construe the statute to avoid such problems." *Id*. Here, the relevant part of the CPA forbids "unfair methods of competition" that "injured other persons, had the capacity to injure other persons, or [have] the capacity to injure other persons." RCW 19.86.093. Because the provision consists of "generically specified acts" and because nothing in the statutory text must be read to "clearly reach the conduct at issue," Mercer's conduct is rendered immune from liability by the *Noerr-Pennington* doctrine. *Sosa*, 437 F.3d at 939.

In sum, the court concludes that based upon the pleadings before it, Mercer is immune from CPA liability. Defendants' CPA counterclaims thus fail to state any claim for which relief can be granted. Accordingly, the court therefore grants, with leave to amend, the motions to dismiss.

ORDER- 10

C.  **Misrepresentation of Copyright Under the DMCA**

Mercer likewise seeks dismissal of Smart Cookie's copyright misrepresentation counterclaims pursuant to the *Noerr-Pennington* doctrine. (12-0188 Mot. at 1.) Copyright misrepresentation under the DMCA is properly pleaded when the alleged facts plausibly suggest that a "copyright owner acted in bad faith by issuing a takedown notice without proper consideration of the fair use doctrine." *Lenz v. Universal Music Corp.*, 572 F. Supp. 2d 1150, 1154-55 (N.D. Cal. 2008). Here, Smart Cookie accuses Mercer of "knowingly making materially false representations" when it sent DMCA take-down notices to Amazon.com and to Smart Cookie's internet service provider ("ISP"). (12-0188 Ans. ¶¶ 32-58.) Specifically, Smart Cookie alleges that Mercer knew that not all of Smart Cookie's products infringed, but that Mercer nonetheless informed Amazon that all Smart Cookie products infringed and must not be sold. (*Id.* ¶¶ 33-36.) Smart Cookie further alleges that Mercer continued to send these allegedly misleading DMCA notices even after Smart Cookie provided evidence that its products did not infringe. (*Id.*) Smart Cookie makes similar factual allegations regarding the notices that Mercer allegedly sent to Smart Cookie's ISP. (*Id.* ¶¶ 46-49.) Based on these allegations, the court concludes that Smart Cookie has pleaded sufficient factual support to state a plausible claim for relief under the DMCA.

The *Noerr-Pennington* doctrine does not afford immunity from the statutory liability. For the reasons explained with respect to the CPA counterclaim, liability pursuant to the DMCA would burden a protected activity, and no *Noerr-Pennington* exception applies. Yet, whereas the CPA was easily construed such that it need not

ORDER- 11

impose liability for the sending of false DMCA notices, there is no alternate interpretation of the DMCA, 17 U.S.C. § 512(f). The DMCA explicitly imposes liability upon any person who, in sending a DMCA notice, "knowingly materially misrepresents under this section that material or activity is infringing." 17 U.S.C. § 512(f). As explained above, this is precisely what Smart Cookie alleges here. The court, therefore, concludes that the *Noerr-Pennington* doctrine does not protect Mercer, and denies the motion to dismiss with respect to Smart Cookie's DMCA counterclaims.

**D.    Intentional Interference with Business Expectancy and Contractual Relations**

Mercer also argues that the *Noerr-Pennington* doctrine protects it from Smart Cookie's counterclaims of intentional interference with business expectancy and intentional interference with contractual relations. (12-0188 Mot. at 1.) Because the court has already determined that the alleged conduct is a protected activity and does not fall under any exception, it is not necessary for the court to repeat the *Noerr-Pennington* analysis described above. Further, the Ninth Circuit has already decided that the doctrine provides immunity from tortious business interference liability. *Theme Promotions*, 546 F.3d at 1007-10 (holding that the doctrine precluded liability where the plaintiff alleged intentional interference based upon the sending of pre-litigation letters and notices). Consequently, the court concludes that the Noerr-Pennington doctrine bars Smart Cookie's counterclaims.

**E.    Declaratory Judgment of Non-Infringement**

Next, Mercer seeks dismissal of Defendants' counterclaims for declaratory judgment of non-infringement. (12-0188 Mot. at 7; 12-0550 Mot. at 6.) In an action or

counterclaim for declaratory judgment concerning claims for non-infringement, the pleading must not only deny infringement, but must explain how specific products do not infringe. *Wistron Corp. v. Phillip M. Adams & Assocs., LLC*, No. *C*–10–4458 EMC, 2011 WL 1654466, at *12 (N.D. Cal. Apr. 28, 2011); *see also Bender v. LG Elecs. U.S.A., Inc.*, No. C 09–02114 JF (PVT), 2010 WL 889541, at *6 (N.D. Cal. Mar. 11, 2010). Without this level of specificity, there is "no way to adjudicate" an infringement or non-infringement claim. *Winstron*, 2011 WL 1654466, at *12. Here, Defendants have satisfied the pleading standard. Defendants have identified the products at issue and have specified exactly why they believe the products do not infringe. (12-0550 Ans. ¶¶ 40-42; 12-0188 Ans. ¶¶ 6-10.) Specifically, Defendants assert that all of their work is original, that they have reason to believe that their products predated Mercer's products, and that any similarities are due to the "inherent" similarities in standardized testing material. (12-0550 Ans. ¶¶ 40-42; 12-0188 Ans. ¶¶ 6-10.) In short, the court concludes that Defendants' factual allegations are sufficient to state a plausible claim for relief.

Nonetheless, Mercer argues that the counterclaims of non-infringement should be dismissed because they are redundant of Mercer's infringement claim and would "needlessly duplicate issues inevitably involved with Defendants' defenses to Plaintiff's copyright claims." (12-0550 Mot. at 7-8; 12-0188 Mot. at 7.) "The Declaratory Judgment Act provides courts with discretion to either grant or dismiss a counterclaim for declaratory judgment." *Sw. Windpower, Inc. v. Imperial Elec., Inc.*, No. CV–10–8200– SMM, 2011 WL 486089, at *3 (D. Ariz. Feb. 4, 2011). Where there are allegations of infringement, courts have emphasized the importance of preserving counterclaims, in part

because the alleged infringer is interested not only in avoiding liability, but also in affirmatively establishing that he or she did not infringe. *See Shoulder Innovations, LLC v. Ascension Orthopedics, Inc.*, No. 11-810 (JEI/AMD), 2012 WL 2092379, at *2 (D. Del. June 08, 2012) (emphasizing that without resolution of the infringement issue, the alleged infringer will not know if he is vulnerable to future suit); *see also Altvater v. Freeman*, 319 U.S. 359, 363 (1943) (emphasizing the right of the defendant to seek declaratory judgment as a counterclaim). When considering whether to dismiss a counterclaim for redundancy, courts should proceed carefully because "it is very difficult to determine whether the declaratory judgment counterclaim really is redundant prior to trial." 6 Charles Alan Wright, et al., Federal Practice and Procedure § 1406 (3d ed. 2011).

Here, Mercer has claimed infringement and Defendants seek a declaratory judgment of non-infringement. (12-0550 Ans. ¶¶ 69-71; 12-0188 Ans. ¶¶ 29-31.) Although all of the issues involved in the counterclaims may be resolved by the resolution of Mercer's claim, Defendants' counterclaims afford an important procedural advantage. In the event that Mercer's infringement claim is not resolved, Defendants will still be able to move forward with the non-infringement counterclaims and thereby seek resolution of the infringement dispute. Accordingly, the court concludes that allowing Defendants' declaratory counterclaims to proceed is the prudent course of action, and therefore denies the motions to dismiss with respect to this issue.

IV.     CONCLUSION

For the reasons stated herein, the court GRANTS in part and DENIES in part Mercer's motions to dismiss (12-0550 Dkt. # 12; 12-0188 Dkt. # 17).  Specifically, the court grants the motions with respect to Defendants' counterclaims of fraudulent business practice under the CPA, and with respect to Smart Cookie's counterclaims of intentional interference with business expectancy and contractual relations.  The court denies the motions with respect to Defendants' counterclaims for declaratory judgment of non-infringement, and with respect to Smart Cookie's counterclaim pursuant to the DMCA, 17 U.S.C. § 512.  Because courts liberally grant leave to amend, Fed. R. Civ. P. 15(a), the court grants Defendants leave to amend the counterclaims.  If, however, these counterclaims are not amended within 20 days of the date of the order, the court will dismiss them without prejudice.

The court further DIRECTS the clerk to file this order in *Mercer Publishing v. TestingMom.com*, Case No. C12-0550JLR, as well as in *Mercer Publishing v. Smart Cookie Ink*, Case No. C12-0188JLR.  The court is filing this order under both case numbers because the motions to which this order corresponds were filed in each case number, respectively.

//

//

//

//

//

The parties, however, should file all future documents in Case No. C12-0188JLR, because the cases have been consolidated for pretrial purposes. (*See* 12-0188 Dkt. # 20; 12-0550 Dkt. # 19).

Dated this 25th day of July, 2012.

JAMES L. ROBART
United States District Judge

ORDER- 16