1

2

3

4

5

6                                             **HONORABLE JAMES L. ROBART**

7                      UNITED STATES DISTRICT COURT
8              WESTERN DISTRICT OF WASHINGTON AT SEATTLE

9

10   MERCER PUBLISHING LLC, MICHAEL        )    CASE NO. 2:12-cv-00188 JLR
     HUBBARD and RACHEL HUBBARD,           )
11   husband and wife, and the marital     )    PLAINTIFFS' MOTION TO
     community comprised therein,          )    DISMISS AMENDED
                                           )    COUNTERCLAIMS PURSUANT TO
12                        Plaintiff,        )    FED. R. CIV. P. 12(b)(6)
                                           )
13                 v.                      )    NOTE FOR MOTION CALENDAR:
                                           )    FRIDAY, SEPTEMBER 21, 2012
14   SMART COOKIE INK, LLC, and DEEPA      )
     RAJAGOPAL,                            )
15                                          )
                                           )
16                        Defendants.       )
                                           )
17   _____     )

18   MERCER PUBLISHING, INC.,              )
     MICHAEL HUBBARD and RACHEL            )    CASE NO. 2:12-cv-00550JLR
19   HUBBARD, husband and wife, and the    )
     marital community comprised therein,  )
20                                          )
                          Plaintiffs,       )
21                                          )
                   v.                      )
22                                          )
     TESTINGMOM.COM LLC, KAREN             )
23   QUINN and MICHAEL MCCURDY,            )
                                           )
24                        Defendants.       )
     _____     )

25

26

PLAINTIFFS'   MOTION   TO   DISMISS   AMENDED   COUNTERCLAIMS          Lybeck ❖ Murphy LLP
PURSUANT TO FED. R. CIV. P. 12(b)(6)- 1                                Chase Bank Building
Case No. 2:12-cv-00188 JLR                                            7900 SE 28th Street, Fifth Floor
                                                                      Mercer Island, WA 98040
                                                                      206-230-4255  Fax 206-230-7791

1

## I.    INTRODUCTION AND RELIEF REQUESTED

2        Plaintiffs respectfully move for an order dismissing Defendants' amended counterclaims

3   pursuant to Fed. R. Civ. P. 12(b)(6).  Defendants' claims for "unfair, deceptive and fraudulent

4   business practices" and Defendant Smart Cookie's claims for intentional interference with business

5   expectancy and contractual relations are each barred by the First Amendment *Noerr-Pennington*

6   doctrine.  Defendants' amended pleading simply reiterate a laundry list of affirmative defenses

7   counterclaims previously pleaded.  Given the statutory presumptions afforded to Plaintiffs'

8   copyright claims and the facts already admitted by Defendants these "new" allegations do not

9   establish any basis to deprive Plaintiffs of Noerr-Pennington immunity for litigation and pre-

10  litigation activities.  Additionally, because Defendants have no standing to bring Lanham Act false

11  advertising claims and have failed to plead essential elements of such claims, this Court should

12  dismiss each of these counterclaims with prejudice.

13

14

15

## II.   PROCEDURAL BACKGROUND

16       On April 3, 2012, Plaintiffs filed this action against Defendants Quinn, Michael

17  McCurdy andTestingMom.com (hereinafter collectively "TestingMom") seeking damages for

18  copyright infringement, intentional interference with business expectancy, and intentional

19  interference with contractual relations.  *See* Doc. 1, at p. 4-6.  On April 18, 2012, TestingMom

20  filed its answer and counterclaims.  *See* Doc. 8.

21       Plaintiffs previously filed motions to dismiss seeking dismissal of Defendants'

22

23  Washington Consumer Protection Act (CPA) and intentional interference with business expectancy

24  and contractual relations counterclaims.  Dkt. 12 (Cause No. C12-cv-00550-JLR) and Dkt. 17

25  (Cause No. C12-cv-00188-JLR).  This Court granted Plaintiffs' motion in significant part but

26  allowed leave for Defendants to amend the counterclaims.  Doc. 27.

Lybeck   ❖   Murphy  LLP
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1    Defendants have filed amended answers and counterclaims.  Doc. 28 and Doc. 29.

2    Defendants' amended counterclaims regarding the CPA and intentional interference with business

3    expectancy and contractual relations are similar to the previous counterclaims which the Court

4    dismissed.  *See* Doc. 28, ¶¶ 87 – 99 (CPA claim); Doc. 29 ¶¶ 67 – 83 (intentional interference with

5    business expectancy), ¶¶ 84 – 97 (intentional interference with contractual relations), and ¶¶ 98 –

6    118 (CPA).  Defendants have added claims for false advertising under the Lanham Act, 15 U.S.C.

7    § 1125(a).  See Doc. 28, ¶¶ 82-86; Doc. 29, ¶¶119-127.  The Defendants have attempted to

8    provide additional facts to support their counterclaims but ultimately they have just taken their

9    affirmative defenses and improperly reiterated them as counterclaims.  For the reasons set forth

10   below, Plaintiffs seek the dismissal with prejudice of Defendants' amended counterclaims.

## III.    FACTUAL BACKGROUND

11   Plaintiff Mercer Publishing, Inc. is a closely held company that is owned by Plaintiffs

12   Michael and Rachel Hubbard and based in Mercer Island, Washington.  Doc. 1 (Complaint and

13   Demand for Jury Trial), ¶5.  Following initial efforts to assist her own children with test

14   preparation, in or about 2007, Ms. Hubbard began a home based business involved in the creation,

15   development, and production of copyrighted materials intended to prepare students for taking

16   gifted student and advanced placement examinations, including the nationally recognized CogAT

17   and NNAT exams.  *Id.*, ¶7; Doc. 28 (Testingmom.com, LLC, Karen Quinn and Michael

18   McCurdy's First Amended Answer and Amended Counterclaims), Answer, ¶7; Doc. 29

19   (Defendants' Second Amended Answer to Complaint, Affirmative Defenses, and Counterclaims),

20   Answer, ¶7.

21   Defendant Deepa Rajagopal purchased and obtained copyrighted CogAT and NNAT

22   practice materials from Plaintiff in November, 2008.  Doc. 29, Answer, ¶9.  She made additional

PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS
PURSUANT TO FED. R. CIV. P. 12(b)(6)- 3
Case No. 2:12-cv-00188 JLR

Lybeck ❖ Murphy LLP
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1   purchases of copyrighted materials in April and June, 2011.  *Id.*, Answer, ¶10.  Plaintiffs' counsel

2   sent a cease and desist notice to Rajagopal in August 2011.  *Id.*, Answer, ¶12; Doc. 29-2.  The

3   notice made certain demands for cessation of infringement and provision of information about the

4   infringing works and those that received them, and requested that Rajagopal contact Plaintiffs'

5   counsel to discuss reasonable compensation for past infringements.  Doc. 29-2.  Subsequently,

6

7   Plaintiffs filed this action against Defendants Rajagopal and Smart Cookie Ink, LLC (hereinafter

8   collectively "Smart Cookie") in February 2012.  *See* Doc. 1, at p. 4-6.  Plaintiffs seek damages for

9   copyright infringement, intentional interference with business expectancy, and intentional

10  interference with contractual relations.  *Id.*  On April 24, 2012, Smart Cookie filed its first

11  amended answer and counterclaims.  Doc. 13.

12

13          Defendants Karen Quinn purchased and obtained CogAT and NNAT practice materials

14  from Plaintiffs in February 2011.  *See* Doc. 28, ¶9.  Defendants Quinn and TestingMom.com,

15  LLC received a cease and desist notice from Mercer Publishing in July 2011.  *Id.*, ¶¶ 11, 61;

16  Doc. 28-1.  The notice set forth Mercer Publishing's good faith belief that Defendants had

17  copied Mercer's works and infringed Mercer's copyrights in its CogAT and NNAT practice

18  materials.  Doc. 28-1.  The notice made certain demands for cessation of infringement and

19  provision of information about others that may have received infringing works, and requested

20  that Defendants contact Plaintiffs to discuss reasonable compensation for past infringements.  *Id.*

21

22                          IV.      ARGUMENT

23          A.      Standards Applicable to Motion to Dismiss.

24          Despite the ordinary standards applicable to a Rule 12(b)(6) motion to dismiss,

25  "conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to

26  state a claim."  *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).  The allegations

PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS
PURSUANT TO FED. R. CIV. P. 12(b)(6)- 4
Case No. 2:12-cv-00188 JLR

Lybeck ❖ Murphy LLP
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1   found in the pleading "must be enough to raise a right to relief above the speculative level." *Bell*

2   *Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929 (2007).  In addition,

3   courts routinely dismiss complaints for failure to state a claim upon which relief can be granted

4   where, as here, an affirmative defense appears on the face of the pleading.  *See, e.g., Northwest*

5   *Airlines, Inc. v. Camacho*, 296 F.3d 787, 791 (9th Cir. 2002).

6

7          A court cannot grant a motion to dismiss based upon an affirmative defense unless that

8   "defense raises no disputed issues of fact."  *Scott v. Kuhlman*, 746 F.2d 1377, 1378 (9th Cir.

9   1984).  Where the allegations in a complaint are contradicted by matters properly subject to

10  judicial notice, a court may grant a motion to dismiss.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629

11  F.3d 992, 998 (9th Cir. 2010).  Additionally, a court may grant a motion to dismiss based upon an

12  affirmative defense where the complaint's allegations, drawing all inferences in plaintiff's favor,

13  nonetheless show that the affirmative defense "is apparent on the face of the complaint."  *See Von*

14  *Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).

15

16         Federal Rule of Evidence 201 allows the court to take judicial notice of certain items

17  without converting the motion to dismiss into one for summary judgment.  *Barron v. Reich*, 13

18  F.3d 1370, 1377 (9th Cir. 1994).  The court may take judicial notice of facts "not subject to

19  reasonable dispute" because they are either:  "(1) generally known within the territorial

20  jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to

21  sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see also Lee v.*

22  *City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that the court may take judicial

23  notice of undisputed "matters of public record"), *overruled on other grounds by* 307 F.3d 1119,

24  1125-26 (9th Cir. 2002).  The court may disregard allegations in a complaint that are

25  contradicted by matters properly subject to judicial notice.  *Daniels-Hall*, 629 F.3d at 998.

26

PLAINTIFFS'   MOTION   TO   DISMISS   AMENDED   COUNTERCLAIMS
PURSUANT TO FED. R. CIV. P. 12(b)(6)- 5
Case No. 2:12-cv-00188 JLR

Lybeck ❖ Murphy LLP
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1    The First Amendment guarantees "the right of the people [] to petition the Government

2    for redress of grievances."  U.S. CONST. amend. I.  The Supreme Court has declared the right

3    to petition to be "among the most precious rights of the liberties safeguarded by the Bill of

4    Rights."  *United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222, 88 S. Ct. 353, 19

5    L.Ed.2d 426 (1967).  This right to petition-often referred to as *Noerr-Pennington* immunity-has

6    been construed to afford a party the right to access the courts.  *See California Motor Transp.*

7    *Co. v. Trucking Unltd.*, 404 U.S. 508, 92 S. Ct. 609, 30 L.Ed.2d 642 (1972).

8

9    Application of *Noerr-Pennington* immunity is a threshold "legal question," suitable for

10   determination on a Rule 12 motion.  *Columbia Pictures Indus., Inc. v. Prof'l Real Estate*

11   *Investors, Inc.*, 944 F.2d 1525, 1532 (9th Cir. 1991).  *See also White v. Lee*, 227 F.3d 1214,

12   1232 (9th Cir. 2000) ("We do not lightly conclude in any Noerr-Pennington case that the

13   litigation in question is objectively baseless, as doing so would leave that action without the

14   ordinary protections afforded by the First Amendment, a result we would reach only with great

15   reluctance.").  Consistent with this right, numerous courts have shielded litigants from claims

16   relating to the filing of litigation.  *See, e.g., Chemicor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119,

17   128-129 (3rd Cir. 1999); *Video Int'l Prod., Inc. v. Warner-Amex Cable Comm.*, 858 F.2d 1075,

18   1082-83 (5th Cir. 1988); *Havaco Am., Ltd v. Hollobow*, 702 F.2d 643, 649 (7th Cir. 1983).

19

20   The filing of a lawsuit is not the only conduct protected by the *Noerr-Pennington*

21   doctrine.  Demands for cessation of offensive conduct and invitations to discuss settlement of

22   claims constitute "conduct incidental to the prosecution of the suit" that is protected under

23   *Noerr-Pennington.  Columbia Pictures Indus., Inc.*, 944 F.2d at 1528; *Sosa v. DIRECTV, Inc.*,

24   437 F.3d 923, 942 (9th Cir. 2006) (holding that settlement demand letters sent prior to litigation

25   over intellectual property rights are protected activity, and that such protection extends to legal

26

PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS
PURSUANT TO FED. R. CIV. P. 12(b)(6)- 6
Case No. 2:12-cv-00188 JLR

Lybeck ❖ Murphy LLP
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

representations made during the course of such settlement communications). Even the mere *threat* of a lawsuit is protected by the *Noerr-Pennington* doctrine. *See Coastal States Marketing, Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983).

In *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60, 113 S. Ct. 1920, 123 L.Ed.2d 611 (1993), the Supreme Court made clear that claims like Defendants' cannot proceed unless the complainant has pled that the underlying litigation-related activities were "objectively baseless in [] that no reasonable litigant could realistically expect success on the merits." The Court further held that the existence of "probable cause," defined as a "reasonable belief that there is a chance [] that (a) claim may be held valid upon adjudication," is an absolute bar to claims based on litigation-related activities because "an objectively reasonable effort to litigate cannot be sham" for *Noerr-Pennington* purposes "regardless of subjective intent." *Id.* at 57 (alteration supplied). "A court may not even consider the defendant's allegedly illegal objective unless it first determines that his lawsuit was objectively baseless." *White*, *supra*, 227 F.3d at 1232, *quoting Prof' Real Estate Investors*, 508 U.S. at 55-57 (internal quotation marks omitted).

## B. Defendants' Amended Claims for CPA Violations are Barred by the *Noerr-Pennington* Doctrine.

Plaintiffs filed this action against Smart Cookie in February 2012. Doc. 1 (Cause No. 12-cv-00188-JLR). Plaintiffs filed a separate action against TestingMom in April 2012. Doc. 1 (Cause No. 12-cv-00550-JLR). The Defendants responded by filing answers and counterclaims. Doc. 8 (Cause No. 12-cv-00550-JLR) and Doc. 13 (Cause No. 12-cv-00188-JLR). In response to the answer and counterclaims, Plaintiffs filed motions to dismiss seeking dismissal of Defendants' CPA and intentional interference with business expectancy and

PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6)- 7
Case No. 2:12-cv-00188 JLR

Lybeck ❖ Murphy LLP
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

1 contractual relations counterclaims.  Dkt. 12 (Cause No. C12-cv-00550-JLR) and Dkt. 17 (Cause

2 No. C12-cv-00188-JLR).  Although this Court granted Plaintiffs' motion in significant part, it

3 allowed leave for Defendant to file amended counterclaims.  Doc. 27.  With the exception of the

4 Lanham Act claims, the Defendants have asserted amended counterclaims that largely reassert the

5 allegations of their earlier asserted counterclaims and affirmative defenses.  Doc. 28 and Doc. 29.

6 The amended counterclaims should be dismissed with prejudice.

7

8        In the order granting in part Plaintiffs' motion to dismiss Defendants' counterclaims,

9 this Court found that Plaintiffs were immune from CPA liability.  Doc. 27.  In so ruling, the

10 Court stated that the "Defendants' CPA counterclaims [] fail[ed] to state any claim for which

11 relief can be granted."  *Id*.  In order to overcome their deficient pleadings, Defendants have

12 amended their counterclaims, attempting to provide additional facts to support their CPA

13 counterclaims.  The Defendants' amended counterclaims remain barred by the *Noerr-*

14 *Pennington* doctrine.

15

16        Defendants argue that Plaintiffs engaged in unfair methods of competition and unfair or

17 deceptive acts or practices when they allegedly sent false and misleading take-down notices.

18 Doc. 28, Counterclaims, ¶89; Doc. 29, Counterclaims, ¶101.  Defendants' assert that Plaintiffs

19 copyright claims are objectively baseless.  Doc. 28, Counterclaims, ¶94; Doc. 29,

20 Counterclaims, ¶101.  Defendants further allege without support that Plaintiffs' copyright

21 claims constitute sham litigation. Doc. 28, Counterclaims, ¶91, Doc. 29, Counterclaims, ¶114.

22

23        In its order, this Court found that Defendants had stated facially plausible CPA claims.

24 Doc. 27, p. 5, lines 11-12.  Nevertheless, it ruled that Plaintiffs' conduct was protected by the

25 *Noerr-Pennington* doctrine because Plaintiffs' conduct fell within the bounds of the *Noerr-*

26 *Pennington* doctrine.  *Id*. at p. 8, line 16.  In reaching that conclusion, the Court noted that

PLAINTIFFS'  MOTION  TO  DISMISS  AMENDED  COUNTERCLAIMS
PURSUANT TO FED. R. CIV. P. 12(b)(6)- 8
Case No. 2:12-cv-00188 JLR

Lybeck ❖ Murphy LLP
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

1   Plaintiffs' "right to use judicial and pre-litigation procedures to resolve purported copyright

2   disputes is protected activity." *Id.*, lines 17-18 (citing *Sosa*, 437 F.3d at 940).  Next, the Court

3   held that "liability pursuant to the CPA would burden [Plaintiffs'] petitioning rights." *Id.* at p.

4   9, lines 2-3.

5

6          The Court then considered whether an exception applied to the conduct. *Id.*, line 7.

7   Defendants, previously argued and currently reassert that Plaintiffs' actions fell into the "sham

8   litigation" exception to the Noerr-Pennington doctrine. *Id.*, line 8.  In previously deciding this

9   issue, this Court held that "an objectively reasonable effort to litigate cannot be sham regardless

10  of subjective intent." *Prof'l Real Estate Investors*, 508 U.S. at 57.  In so doing, this Court ruled

11  that in order to properly plead the sham exception, Defendants must "allege facts that suggest

12  that the accused conduct is objectively baseless." *Id.* at p. 9, line 22 through p. 10, line 1 (citing

13  *Prof'l Real Estate Investors*, 508 U.S. at 61).  This Court concluded that Defendants had not

14  alleged such facts and that no exception applies. *Id.* at p. 10, lines 1-3.  Defendants' amended

15  counterclaims continue to fail to even allege facts demonstrating that Plaintiffs' conduct was

16  objectively baseless.

17

18         In *Professional Real Estate Investors*, 508 U.S. at 60-61, the Supreme Court set forth a

19  two-part definition for "sham" litigation.  In the first part of the definition, "the lawsuit must be

20  objectively baseless in the sense that no reasonable litigant could realistically expect success on

21  the merits." *Id.* at 60.  Where an objective litigant can "conclude that the suit is reasonably

22  calculated to elicit a favorable outcome, the suit is immunized under *Noerr* [.]" *Id.* A litigant's

23  subjective motivation may only be examined if the challenged litigation has been determined to

24  be objectively meritless. *Id.*

25

26

PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6)- 9
Case No. 2:12-cv-00188 JLR

Lybeck ❖ Murphy LLP
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1    A party's conduct which is incidental to a lawsuit, including the sending of a pre-suit

2  demand letter, falls within the protection of the *Noerr-Pennington* doctrine.  *Sosa*, 437 F.3d at

3  936-938.  A pre-suit letter that threatens legal action may be restricted by law if the letter includes

4  baseless representations that would fall into the "sham litigation" exception.  *Id.* at 940-41.

5    In filing the lawsuit, Plaintiffs had a realistic expectation that they would succeed on the

6  merits of the case.  *Prof'l Real Estate Investors*, 508 U.S. at 60.  Defendants' unsupported

7  arguments that Plaintiffs' litigation is a "sham" are insufficient for this Court to find that

8  Plaintiffs' actions are "objectively baseless."  It is undisputed that Plaintiffs' complaint, cease

9  and desist letters and take-down notices were each expressly based on a "good faith belief" that

10 the Defendants purchased Mercer's copyrighted works and then republished those works.  *See*

11 Doc. 1 (Complaint), ¶¶ 11, 14; Docs. 28-1, 29-2 (cease and desist letters); Docs. 29-1, 29-6, 29-

12 7, 29-8 (take-down notices).

13
14   "Plaintiffs must satisfy two requirements to present a prima facie case of direct

15 [copyright] infringement:  (1) they must show ownership of the allegedly infringed material and

16 (2) they must demonstrate that the alleged infringers violate at least one exclusive right granted

17 to copyright holders under 17 U.S.C. § 106."  *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d

18 1004, 1013 (9th Cir. 2001).  To show direct infringement by copying, a claimant must establish

19 (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are

20 original.  *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006)

21 (*quoting Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113

22 L.Ed.2d 358 (1991)).  "Absent evidence of direct copying, proof of infringement involves fact-

23 based showings that the defendant had access to the plaintiff's work and that the two works are

24 substantially similar."  *Id.* (quotation omitted).

Lybeck ❖ Murphy LLP
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1    As stated in the statute, a certificate of copyright registration establishes a presumption

2    that the copyright is valid.  17 U.S.C. § 410(c); *Sega Enters. Ltd. v. Maphia*, 948 F.Supp. 923,

3    931 (N.D. Cal. 1996).  "A certificate of copyright registration, therefore, 'shifts to the defendant

4    the burden to prove the invalidity of the plaintiff's copyrights.'"  *Ent. Research v. Genesis*

5    *Creative Group*, 122 F.3d 1211, 1217 (9th Cir. 1997) (citation omitted).

6

7    The Copyright Act, contrary to Defendants' assertions, imposes no requirement, at the

8    pre-litigation or pleading stage, that Plaintiffs provide counsel with "deposit copies" of the

9    copyrighted works.  Plaintiffs having pleaded the ownership of valid copyrights, and defendants

10   having admitted access and similarity, plaintiffs have set forth a prima facie case of

11   infringement for which litigation activities are entitled to First Amendment protection.  As

12   such, Defendants cannot convert such a prima facie case to "sham litigation" simply by reciting

13   a laundry list of standard affirmative defenses (many of them internally inconsistent) in the

14   form of counterclaims. See, e.g., Doc. 29, Counterclaims, ¶¶ 29, 30; Doc. 28, Counterclaims,

15   ¶70, 71.

16

17   The alleged acts and communications complained of by Defendants were all incidental

18   to the threat of or filing of the present lawsuit, or took place during the course of pre-lawsuit

19   settlement communications.  Defendants cannot now argue that the Plaintiffs' copyright claims

20   are "objectively baseless" especially after admitting to having access to and having in fact

21   purchased Plaintiffs' copyrighted materials in preparation for publishing their "own" materials.

22    Doc. 28, Answer, ¶9; Doc. 29, Answer, ¶¶ 9-10.  The actions taken by Plaintiffs were

23   objectively reasonable efforts to protect their copyrights or otherwise seek relief from the

24   courts, and these efforts are protected by the *Noerr-Pennington* doctrine.  This Court should

25   dismiss with prejudice the Defendants' amended counterclaims regarding the CPA.

26

PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS
PURSUANT TO FED. R. CIV. P. 12(b)(6)- 11
Case No. 2:12-cv-00188 JLR

Lybeck ❖ Murphy LLP
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

1

2      **C.      Smart Cookie's Claims for Intentional Interference with Business**
3              **Expectancy and Intentional Interference with Contractual Relations**
               **Counterclaims are Barred by the *Noerr-Pennington* Doctrine.**

4              Smart Cookie's amended counterclaims asserting intentional interference with business
5
       expectancy and intentional interference with contractual relations also are barred by the *Noerr-*
6
7      *Pennington* doctrine. See Doc. 29, ¶¶ 67 – 83 (intentional interference with business

8      expectancy) and ¶¶ 84 – 97 (intentional interference with contractual relations).  As with the

9      claims for CPA violations, Smart Cookie attempts to bolster its counterclaims by asserting that
10
       Plaintiffs do not have valid copyrights, again simply reiterating in the form of allegations a
11
       laundry list of standard affirmative copyright defenses.
12
13             As discussed above with regard to Defendants' CPA claims, Smart Cookie's intentional

14     interference claims are based on Plaintiffs' litigation and pre-litigation activities, which acts

15     were in turn premised on Plaintiffs' express good faith belief that Smart Cookie had infringed

16     their valid copyrights.[1]  Given the statutory presumption of validity afforded to copyright

17     registrations, and Defendants' admission of access and similarity, Plaintiffs' activities cannot be
18
       deemed "sham litigation."  For the reasons discussed above, Smart Cookie's intentional
19
       interference claims must be dismissed.
20
21     **D.      Defendants' Lanham Act Claims Must be Dismissed.**

22     **1.      Defendants Have not Adequately Pleaded Lanham Act Claims.**

23             For a claim for false advertising under the Lanham Act, a "prima facie case requires a
24
       showing that (1) the defendant made a false statement either about the plaintiffs or its own
25

26     ―――――――――――――――
       [1] Plaintiffs are cognizant of the Court's prior decision with regard to Noerr-Pennington immunity and Smart
       Cookie's prior claims for copyright misrepresentation pursuant to 17 U.S.C. § 512(f). Doc. 27, at 11.  Plaintiffs
       intend to answer these claims following the Court's decision upon the instant motion.

PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS          Lybeck ❖ Murphy LLP
PURSUANT TO FED. R. CIV. P. 12(b)(6)- 12                     Chase Bank Building
Case No. 2:12-cv-00188 JLR                                   7900 SE 28th Street, Fifth Floor
                                                             Mercer Island, WA  98040
                                                             206-230-4255   Fax 206-230-7791

product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material, in that it is likely to influence the purchasing decision; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiffs product." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 fn. 4 (9th Cir. 2002), citing *Cook, Perkiss, & Liehe v. Northern California Collection Service, Inc.*, 911 F.2d 242, 244 (9th Cir. 1990) and *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir.1997).

In *Cook, Perkiss, & Liehe*, 911 F.2d at 245, the Ninth Circuit held that whether an alleged misrepresentation "is a statement of fact" or is, instead "mere puffery" is a legal question that may be resolved on a Rule 12(b)(6) motion.  A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance.  Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim.  *Id.* at 246.  "The common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions." *Id.*

### a.  TestingMom Claim Not Adequately Pleaded

#### i.  The Challenged Commentary Did Even Not Refer to a TestingMom Product

According to TestingMom's Counterclaims, its Lanham Act claim is based on an internet comment made by "Mercer Publisher" that was appended to an article by Julie Shapiro

PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6)- 13
Case No. 2:12-cv-00188 JLR

Lybeck ❖ Murphy LLP
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

1   for DNAinfo.com New York Neighborhood News.  *See* Doc. 28, Counterclaims, ¶¶ 75, 84;

2   Doc. 28-2.  This website's "About Us" description states:

3           DNAinfo.com is New York's leading hyper-local news source, covering New
4           York City's neighborhoods. We deliver up-to-the-minute reports on
            entertainment, education, politics, crime, sports, and dining. Our award-winning
5           journalists find the stories — big or small — that matter most to New Yorkers.

6   *See* http://www.dnainfo.com/new-york/about-us/.

7           The only aspect of the challenged commentary that could plausibly be said to be a

8   "statement of fact"—as opposed to non-actionable statements of opinion or mere puffery—is

9   the single sentence:  "The sample Naglieri question provided by Testingmom.com for this

10  article is not a type of question on the Naglieri exam."  *See* Doc. 28, Counterclaims, ¶75.  In the

11  article itself, Julie Shapiro provides a description of a "typical Naglieri question," which she

12

13  later attributes to "Michael McCurdy, co-founder of TestingMom.com, who provided the

14  sample Naglieri question."  *See id.*, ¶75, and web page hyperlinked therein.

15          A false advertising claim specifically requires "a false statement either *about the*

16  *plaintiffs or its own product.*"  *Jarrow Formulas, Inc.*, 304 F.3d at 835 fn. 4.  The allegation of

17

18  TestingMom makes it plain that the challenged comment was not directed at a TestingMom

19  product, but instead a "sample" or "typical" Naglieri exam question described by the article's

20  author, Julie Shapiro.  At worst, the statement is the sort of general "negative commentary"

21  which does not constitute an actionable false statement made in reference to a commercial

22  product.

23

24              ii.      The Challenged Commentary was not Made in
                        Commercial Advertisement or Promotion

25          As discussed in detail above, the challenged internet commentary on the Shapiro news

26  article was not "made in commercial advertisement or promotion."  This is apparent from the

Lybeck  ❖  Murphy  LLP
Chase Bank Building
7900 SE 28ᵗʰ Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1  face of the Counterclaims, the attachments thereto supplied by TestingMom, and the basic

2  journalistic nature of the DNAinfo.com website, which is subject to judicial notice.

3          This conclusion is bolstered by a very close analogue from the recent case of *Bernard v.*

4  *Donat*, 2012 WL 525533 (N.D.Cal. February 16, 2012).  In *Bernard*, the plaintiff complained

5  about the defendant's making disparaging remarks on various websites and filed Lanham Act

6  false advertising claims against him.  In dismissing the claims on the pleadings, the court

7  explained:

8

9          The FAC indicates that the allegedly unlawful statements were made in the form
           of negative "comments" on the websites pissedconsumer.com and
10         complaintsboard.com, as well as blog posts on the website blogspot.com. FAC
           ¶¶ 12–14.  Plaintiff argues defendant's statements are "commercial speech"
11         simply because they were made on "commercial websites." Dkt. No. 34 at 9. The
           court does not understand the definition of commercial speech to be so broad.
12         First, plaintiff cites no authority supporting his position that
           pissedconsumer.com, complaintsboard.com, or the Blog are "commercial
13         websites," nor that all statements made on such websites are "commercial
           speech."  Furthermore, in general, "negative commentary … does more than
14         propose a commercial transaction and is, therefore, non-commercial."  *Nissan*
           *Motor Co.*, 378 F.3d at 1017 (finding that links on the website nissan.com,
15         which was owned by Nissan Computer, to disparaging content about Nissan
           Motor Company were not commercial speech and therefore entitled to full
16         protection under the First Amendment).  Finally, the allegations do not suggest
           that defendant's statements were advertisements for a product or service, nor
17         that they proposed commercial transactions or were motivated by defendant's
           commercial interests.  *Compare Bolger*, 463 U.S. at 66–68.  Accordingly, the
18         court finds that the FAC does not show that the accused statements constitute
           "commercial speech," and therefore fails to state a claim under the Lanham Act.
19

20

21  *Bernard*, 2012 WL 525533 at *3.  For these reasons, and those discussed above, TestingMom

22  has failed to state a claim for false advertising.

23              **b.  Smart Cookie Lanham Act Claim Not Adequately Pleaded**

24          This Circuit requires for a prima facie case of false advertising a showing that "the

25  plaintiff has been or is likely to be injured as a result of the false statement, either by direct

26

PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS
PURSUANT TO FED. R. CIV. P. 12(b)(6)- 15
Case No. 2:12-cv-00188 JLR

Lybeck ❖ Murphy LLP
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

1    diversion of sales from itself to the defendant, or by a lessening of goodwill associated with

2    [the plaintiff's] product." *Southland Sod Farms*, 108 F.3d at 1139.

3           Smart Cookie's false advertising claims are based on two sentences it located on the

4    Amazon.com website, which read:

5
6                 Mercer Publishing has the only available practice materials in the format of the
                  CogAT exam.
7                 ..
                  Mercer Publishing has the only available practice materials in the format of the
8                 NNAT exam.

9    *See* Doc. 29, ¶ 121; Doc. 29-2.

10          It is plain from the face of the pleadings themselves that these statements were

11   published in 2008.  *See* Doc 29-2 at 2 ("Publication Date: 2008"), 4 (same).  In Smart

12   Cookie's Counterclaims, it affirmatively alleges that Ms. Rajagopal was not even

13   contemplating entering the business of producing test preparation materials until September

14   2009, and did not publish any materials until August 2011.[2]  See Doc. 29, Counterclaims, ¶9.

15   When the statement was made, there was no possibility that the statement could have diverted

16   sales away from Smart Cookie, or that it could have had any bearing on Smart Cookie's non-

17   existent goodwill.  Smart Cookie's claim for false advertising fails as a matter of pleading and

18   should be dismissed.

19

20          **2.      Defendants Have No Standing to Bring Lanham Act Claims.**

21          The scope of a Lanham Act false advertising claim is limited, as the Ninth Circuit has

22   held:

23

24   _____

25   [2] The Court can take judicial notice of the fact that these statements are on a site controlled and maintained by
     Amazon.com, not Plaintiffs.  *See* Doc. 29-2.  Plaintiffs have had no ability or duty to monitor and edit the site
26   contents subsequent to initial submission of product information.  Unfortunately for Plaintiffs, for purposes of this
     motion pursuant to Fed.R.Civ.P. 12(b)(6), it may be irrelevant that the statement was absolutely true when made,
     contrary to Smart Cookie's misleading allegations.

PLAINTIFFS'   MOTION   TO   DISMISS   AMENDED   COUNTERCLAIMS
PURSUANT TO FED. R. CIV. P. 12(b)(6)- 16
Case No. 2:12-cv-00188 JLR

Lybeck ❖ Murphy LLP
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1
2
3
4
5
6

> The Lanham Act was intended to protect against the "deceptive and misleading use of marks" and to "protect persons engaged in . . . [interstate] commerce against unfair competition." 15 U.S.C. § 1127; *Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003). Section 43(a), 15 U.S.C. § 1125(a), "is one of the few provisions [of the Act] that goes beyond trademark protection" and addresses unfair competition. *Dastar*, 539 U.S. at 29, 123 S.Ct. 2041. *This provision, however, "does not have boundless application as a remedy for unfair trade practices" and is not a "federal 'codification' of the overall law of 'unfair competition' . . . but can apply only to certain unfair trade practices prohibited by its text." Id.* (citations omitted).

7
8
9

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1143 (9th Cir. 2008) (emphasis added).

10
11
12
13
14
15
16
17

The Ninth Circuit set out the test for Lanham Act standing in *Jack Russell Terrier Network of Northern California v. American Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005), where it held that "a plaintiff must show:  (1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant."  Thus, "[t]o be actionable, [the defendant's] conduct must not only be unfair but must in some discernible way be competitive."  *Halicki v. United Artists Communications, Inc.*, 812 F.2d 1213, 1214 (9th Cir. 1987).

18
19
20
21
22
23
24

For all false advertising claims, including those which are internet-based, the alleged misrepresentations must be "made in a commercial advertisement or promotion." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 828-29 (9th Cir. 2011).  *See also Podiatrist Association, Inc. v. La Cruz Azul De Puerto Rico, Inc.*, 332 F.3d 6, 19 (1st Cir. 2003) ("The relevant statutory language prohibits misrepresentations only in 'commercial advertising or promotion.'"); *Sanderson v. Culligan Intern, Co.*, 415 F.3d 620, 624 (7th Cir. 2005).

25
26

The core notion of commercial speech is "speech which does no more than propose a commercial transaction." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422, 113

PLAINTIFFS'   MOTION   TO   DISMISS   AMENDED   COUNTERCLAIMS
PURSUANT TO FED. R. CIV. P. 12(b)(6)- 17
Case No. 2:12-cv-00188 JLR

Lybeck ❖ Murphy LLP
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1  S.Ct. 1505, 123 L.Ed.2d 99 (1993) (citations omitted).  The Ninth Circuit has specifically held

2  that "[n]egative commentary [] does more than propose a commercial transaction and is,

3  therefore, non-commercial."  *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002,

4  1017 (9th Cir. 2004).

5                 **a.**       **TestingMom Lacks Standing.**

6  

7         As discussed above, the commentary which TestingMom bases its Lanham Act claim

8  upon was a journalistic article.  *See* Doc. 28, Counterclaims, ¶¶ 75, 84; Doc. 28-2.

9  The commentary was made in connection with a journalistic article, not any kind of commercial

10  advertisement or promotion by Plaintiffs.  As such, it cannot give rise to any sort of

11  "commercial" or "competitive" injury for which redress under the Lanham Act is possible.[3]

12  

13         TestingMom also complains in a single sentence about unspecified "false and

14  misleading statements to the Copyright Office regarding the origination of [Mercer's] work and

15  to third parties asserting copyright infringement by TestingMom.com LLC and Smart Cookie

16  Ink, LLC." Doc. 28, Counterclaims, ¶84.

17         Under the Lanham Act, TestingMom has no standing to complain about statements that

18  are allegedly injurious to Smart Cookie or other third parties.  *See TrafficSchool.com, Inc.*, 653

19  F.3d at 826 fn 2 ("A plaintiff may meet both prongs of *Jack Russell* and still lack standing if the

20  purpose of his false advertising suit is to enforce someone else's statutory rights.") (citation

21  omitted).  Moreover, statements made to the Copyright Office are plainly not commercial

22  advertisements or promotions, and TestingMom's Lanham Act claim fails to identify any other

23  

24  

25  

26  _____
[3] To the contrary, to the extent the cited statements constitute commentary on the educational testing issues discussed in the Shapiro piece it is entitled to "full First Amendment protection."  *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 903 (9th Cir. 2002).

PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS
PURSUANT TO FED. R. CIV. P. 12(b)(6)- 18
Case No. 2:12-cv-00188 JLR

1   asserted "false and misleading statements [] to third parties" whatsoever, much less those which

2   caused it any "commercial" or "competitive" injury.

3        TestingMom's Lanham Act claims should be dismissed for lack of standing.

4             **b.     Smart Cookie Lacks Standing.**

5        As previously discussed, the statements upon which Smart Cookie based its false

6   advertising claims on were published in 2008.  *See* Doc 29-2 at 2 ("Publication Date: 2008"), 4

7
8   (same).

9        Defendants allegations establish that Smart Cookie did not compete with Plaintiff until

10  several years after the alleged statements were made.  Smart Cookie alleges that it did not

11
12  contemplate producing test preparation materials until September 2009 and did not enter the

13  market until August 2011.  As such, Smart Cookie could not have suffered any plausible,

14  compensable "commercial" or "competitive" injury as result of the 2008 statements.  Smart

15  Cookie plainly lacks standing to bring claims based on such statements.

16            **3.     TestingMom's Claims Are Barred by *Noerr-Pennington* Doctrine.**

17       As noted above, TestingMom's false advertising claim alleges in part that Plaintiffs

18  made unspecified "false and misleading statements to the Copyright Office regarding the

19
20  provenance of [Mercer's] work."  See Doc. 28, Counterclaims, ¶84.  Obviously these non-

21  commercial communications are, like many other communications discussed above, just the

22  sort of "petitions" for governmental assistance that are entitled to *Noerr-Pennington* protection.

23   Testing Mom's false advertising claims based on communications to the Copyright Office

24  should be dismissed with prejudice.

25

26

Lybeck ❖ Murphy LLP
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1

## IV.   <u>CONCLUSION</u>

2

For the foregoing reasons, Plaintiffs respectfully asks that this Court dismiss Defendants'

3

CPA violations, intentional interference with business expectancy, intentional interference with

4

contractual relations, and Lanham Act claims with prejudice.  Plaintiffs will answer Defendants'

5

amended counterclaims once this Court has ruled on this motion.

6

RESPECTFULLY SUBMITTED this 4th day of September, 2012.

7

8

LYBECK MURPHY, LLP

9

10

By:_____/s/ Benjamin R. Justus_____
Lory R. Lybeck (WSBA #14222)

11

Benjamin R. Justus (WSBA #38855)
Lybeck Murphy, LLP

12

Fifth Floor Chase Bank Building
7900 SE 28th Street

13

Mercer Island, WA  98040-6004
206-230-4255 /phone

14

206-230-7791 /fax
lrl@lybeckmurphy.com

15

brj@lybeckmurphy.com
Attorneys for Plaintiffs

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS'   MOTION   TO   DISMISS   AMENDED   COUNTERCLAIMS
PURSUANT TO FED. R. CIV. P. 12(b)(6)- 20
Case No. 2:12-cv-00188 JLR

Lybeck ❖ Murphy LLP
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

<u>CERTIFICATE OF SERVICE</u>

1

2

3    I hereby under penalty of perjury, declare that on September 4, 2012, I electronically filed the foregoing PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6)- 21 with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

4

5    Rex Bennett Stratton, III
STRATTON LAW & MEDIATION P.S.
6    Stratton@rbs-law.com

7

8    Deborah M. Lodge
PATTON BOGGS
9    dlodge@pattonboggs.com

10

11

12    _/s/ Darcie Karn_____
Darcie Karn
13    Legal Assistant

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6)- 21
Case No. 2:12-cv-00188 JLR

Lybeck ❖ Murphy LLP
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791